# Hay Walker, Jr., et al., Plffs. in Err., *v.* Commonwealth of Pennsylvania.

The act of May 21, 1885, prohibiting the manufacture and sale of oleomargarine falls within the power of the general assembly to legislate for the public health.

Where the legislature has prohibited the manufacture and sale of an article as detrimental to public health, the courts are bound to presume that the legislature has acted upon sufficient evidence that the article was detrimental.

(Submitted October 27, 1887. Decided November 7, 1887.)

October Term, 1887, No. 143, W. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ. Error to the

NOTE.—The decision in this case is based upon Powell v. Com. 114 Pa. 265, 60 Am. Rep. 350, 7 Atl. 913. Affirmed on appeal, 127 U. S. 678, 32 L. ed. 253, 8 Sup. Ct. Rep. 992, 1257. The act of 1885 has been held to be unconstitutional in so far as it prevents the bringing of oleomargarine from another state, and a sale thereof in the original package. Schollenberger v. Pennsylvania, 171 U. S. 1, 43 L. ed. 49, 18 Sup. Ct. Rep. 757, Reversing 156 Pa. 201, 22 L. R. A. 155, 4 Inters. Com. Rep. 488, 36 Am. St. Rep. 32, 27 Atl. 30. See also Com. v. Paul, 170 Pa. 284, 30 L. R. A. 396, 50 Am. St. Rep. 776, 33 Atl. 82.

A similar determination has been made as to the constitutionality of the act of June 26, 1895, known as the pure food law. Com. v. Kevin, 202 Pa. 23, 90 Am. St. Rep. 613, 51 Atl. 594, Affirming 18 Pa. Super. Ct. 414. And as to the act of May 5, 1899. McCann v. Com. 198 Pa. 509, 48 Atl. 470.

See also the following cases in reference to the constitutionality of legislation directed to protecting the public from certain articles as being detri-

Quarter Sessions of Allegheny County to review a conviction on an indictment for violating the provisions of an act forbidding the manufacture and sale of oleomargarine. Affirmed.

Hay Walker, Jr., John H. Wilson, George Harley, Emil Winter, and Harvey Wilson were severally indicted for the manufacture and sale of oleomargarine, contrary to the provisions of an act of the general assembly, approved May 21, 1885, entitled, "An Act for the Protection of the Public Health and to Prevent Adulteration of Dairy Products and Fraud in the Sale Thereof."

The case of the commonwealth was the admission of the plaintiffs in error, which was in the following words: "That the defendants sold in Allegheny county, Pennsylvania, on the second day of February, 1887, as an article of food, to S. J. Adamson, the prosecuting witness in this case, one original package of an article manufactured in Allegheny county, Pennsylvania, by the defendants, out of oleaginous substances and compounds other than that produced from unadulterated milk or cream from the same, and designed to take the place of butter produced from unadulterated milk or cream; that the said package was sold and bought as oleomargarine or butterine, and not as butter produced from pure, unadulterated milk or cream from the same, and that said defendants had in their possession, with intent to sell the same as an article of food, the said package; and that the said package, when sold, was marked with the words, 'Oleomargarine butter,' upon the lid and side of the package in a straight line in Roman letters, one half inch long, as provided in the act of the general assembly of this state, entitled 'An Act for the Protection of Dairymen and to Prevent Deception in the Sale of Butter and Cheese,' approved May 24, 1883."

The commonwealth then rested.

mental to the public health, and in relation to proceedings to enforce such legislation. Oleomargarine: People v. Arensberg, 103 N. Y. 388, 57 Am. Rep. 741, 8 N. E. 736, 105 N. Y. 123, 59 Am. Rep. 483, 11 N. E. 277; State, Hoeberg, Prosecutor, v. Newton, 49 N. J. L. 617, 9 Atl. 751; Carter Bros. v. Camden Dist. Ct. 49 N. J. L. 600, 10 Atl. 108; Adulterated milk: People v. Cipperly, 101 N. Y. 634, 4 N. E. 107; Com. v. Tobias, 141 Mass. 129, 6 N. E. 217; Com. v. Bowers, 140 Mass. 483, 5 N. E. 469; State v. Groves, 15 R. I. 208, 2 Atl. 384; Com. v. Smith, 143 Mass. 169, 9 N. E. 631; Com. v. Kenneson, 143 Mass. 418, 9 N. E. 761; Com. v. Spear, 143 Mass. 172, 9 N. E. 632; Com. v. Lockhardt, 144 Mass. 132, 10 N. E. 511; People v. Kibler, 106 N. Y. 321, 12 N. E. 795; Dairy products: People v. West, 106 N. Y. 293, 60 Am. Rep. 452, 12 N. E. 610.

The defendants offered to prove that prior to the 21st day of May, 1885, and on the 10th day of May, 1881, they were and they ever since have been and still are citizens of the state of Pennsylvania, residing within the county of Allegheny in said state, and that on May 10, 1881, they associated themselves as a voluntary partnership organization (authorized by the laws of the state of Pennsylvania) under the name of the Pittsburgh Melting Company, for the purpose of the manufacture and sale of oleomargarine or butterine, it being an article manufactured out of oleaginous substances and compounds other than that produced from unadulterated milk or cream from the same, and designed to take the place of butter produced from unadulterated milk or cream; that on the 10th of May, 1881, and prior thereto, there was no statute or law in the state of Pennsylvania prohibiting such manufacture and sale; but, on the contrary thereof, there was in force an act of the general assembly of the state of Pennsylvania, entitled "An Act to Prevent Deception in the Sale of Butter and Cheese," approved May 22, 1878, and that subsequent thereto the general assembly of this state passed and the governor approved, an act entitled "An Act for the Protection of Dairymen and to Prevent Deception in the Sale of Butter and Cheese," said act being approved May 24, 1883, and with this offer the defendants offer in evidence each of the said acts.

That for the purpose of the manufacture of the said oleomargarine and butterine the said defendants, under the name of the Pittsburgh Melting Company, purchased a large quantity of machinery in the years 1881, 1882, and 1883, especially made for and adapted to the manufacture of the said oleomargarine or butterine, and erected the said machinery in a building for that purpose; and prior to the first day of January, 1885, the said defendants under the name of The Pittsburgh Melting Company had invested in said machinery a sum of money exceeding $20,-000, of which sum the defendant, Hay Walker, contributed $10,000.

That the said defendants continued to manufacture with the said machinery said oleomargarine or butterine, and to sell said manufactured product up to and until and including the 21st of May, 1885, at which time an act was passed by the general assembly of the state of Pennsylvania, and approved by the governor of said state, entitled "An Act for the Protection of the

Public Health and to Prevent Adulteration of Dairy Products and Fraud in the Sale Thereof," which act the defendants offer in evidence, it being the same act under which the indictment in this case is found.

That after the passage and approval of the said act of May 21, 1885, the said defendants continued just as before its passage to manufacture by the use of the said machinery, but not otherwise, said oleomargarine or butterine and to sell the same, and the identical package of oleomargarine or butterine which was sold to the prosecuting witness was manufactured by the said defendants subsequent to the 21st of May, 1885, but solely by the use of the said machinery purchased as aforesaid, prior to the said 21st of May, 1885.

That said defendants, in the carrying on of their said business, and in the manufacture of the said oleomargarine or butterine, and in the manufacture of the identical package of oleomargarine or butterine hereinbefore specified, which was sold to the prosecuting witness in this case, used only pure animal fats; that the process of its manufacture was clean and wholesome; that the articles manufactured contained the same elements as pure butter; that the only difference between them is that the manufactured article contains a small proportion of a fatty substance which is known as butterine; that this butterine exists in pure butter in the proportion of from 3 to 7 per cent and in the manufactured article in a smaller proportion, and this was increased in the manufactured article by the introduction of milk and cream.

That this having been done, the article sold and manufactured contains all the elements of pure butter produced from pure unadulterated milk or cream from the same, except that the percentage of butterine is slightly smaller; that the only effect of butterine is to give flavor to the butter and it has nothing to do with its wholesomeness; that the oleaginous substances in the manufactured article are substantially identical with those produced from milk or cream, and that the article manufactured and sold by the defendants to the prosecuting witness is a wholesome and nutritious article of food, made as hereinbefore stated by the use of machinery and appliances purchased and owned by said defendants prior to the 21st of May, 1885; and that the said butterine or oleomargarine as manufactured and sold to the prosecuting witness was in all respects as wholesome and health-

ful as butter produced from pure unadulterated milk or cream from the same.

That the said act of May 21, 1885, prevents the said defendants from using the said machinery, as aforesaid, for the manufacture of oleomargarine or butterine, and that by such deprivation the said machinery is much depreciated in value and rendered almost useless, and instead of being worth the sum of $20,000, as it would be if used for the said purposes for which it was made or used, it is rendered of much less value, being worth only the sum of $5,000.

That prior to the said 21st of May, 1885, and on the 10th of May, 1881, the said defendants expended considerable sums of money and went to great labor to fit themselves for the pursuit or the calling of the manufacture and sale of oleomargarine or butterine; and that they then, May 10, 1881, adopted the manufacture and sale of said oleomargarine and butterine as their occupation or calling in life, and continued from thence up until after the passage of said act of May 21, 1885, in the pursuit of their calling and occupation in life and made therefrom large gains and profits; and that in the manufacture of the said oleomargarine or butterine, during all said time, the process of manufacture, the articles out of which it was manufactured, and the oleomargarine and butterine manufactured and sold, was as hereinbefore stated.

That there was neither deceit nor fraud practised in either the manufacture or sale of any of the oleomargarine, nor was it an adulterated product.

That the said act of May 21, 1885, in prohibiting the manufacture or sale of the said oleomargarine or butterine, deprives the defendants of the gains and profits they had made in their calling and occupation, and in the manufacture and sale of the said oleomargarine and butterine, besides rendering of much less value the machinery in which the said defendants invested as aforesaid, and depriving the defendants of their calling or occupation in life.

This for the purpose of showing:

1. That the manufacture and sale of oleomargarine or butterine for which the defendants are indicted, in no way injuriously affects the health, morals, peace, or the good order of society or of any citizen or resident of the state of Pennsylvania, and that the said oleomargarine or butterine manufactured and sold is

not an adulteration of a dairy product, nor is it an adulterated article.

2. That the said act of May 21, 1885, is not an exercise of, or within, the police power of the state of Pennsylvania.

3. That the said act of May 21, 1885, is in conflict with and repugnant to the provisions of the 14th Amendment of the Constitution of the United States in that: (*a*) it deprives the defendants of their liberty without due process of law; (*b*) in that it deprives the defendants of their property without due process of law; (*c*) in that it denies to the defendants the equal protection of the laws of the state of Pennsylvania.

4. That the said act is in conflict with and repugnant to the provisions of the Constitution of the state of Pennsylvania, in that it takes from the defendants their calling and property without due process of law and without compensation; and also in that it strikes down one industry (that of the manufacture and sale of oleomargarine) to benefit another industry (that of the manufacture and sale of butter produced from milk or cream).

Counsel for the commonwealth objected to the evidence offered by defendants upon the following grounds: (1) The evidence is not material; (2) it is not relevant; and (3) even if the facts set forth in the offer were established by proof, they would not constitute a legal defense.

*Ans.* The recent case of Powell v. Com. 114 Pa. 265, 60 Am. Rep. 350, 7 Atl. 913, decided by the supreme court of Pennsylvania in January of this year, in our opinion decides the questions raised by this offer and is binding on us.

The defendants offered to prove that on and prior to the 21st of May, 1885, their occupation or calling in life was the manufacture and sale of oleomargarine or butterine in Allegheny county, Pennsylvania, and that prior to May 21, 1885, and in said county, in order to fit and prepare themselves for such occupation or calling, they had expended considerable sums of money and gone to great labor.

That in pursuance of their occupation and calling in life, the defendants did, after May 21, 1885, manufacture and sell to the prosecuting witness the package of oleomargarine, and that said oleomargarine was made solely from pure animal fats, and the process of its manufacture was clean and wholesome and that said oleomargarine is a wholesome and nutritious article of food, and in all respects as wholesome and healthful as pure

butter, produced from pure, unadulterated milk or cream from the same. That there was no fraud or deception in either manufacture or sale of said oleomargarine, and that said oleomargarine was not an adulterated product.

Counsel for the commonwealth objected to the evidence offered for the reason that it is not relevant and it is not material. The act forbids the manufacture and sale of the article, and it is not material to the inquiry in this case whether it was sold openly or not, nor whether it was pure or adulterated.

*Ans.* "The objections are sustained. The testimony offered is excluded." (Second assignment of error.)

The points submitted by the defendants and refused by the court presented substantially the same questions as were raised by the foregoing offers of evidence.

The defendants were severally found guilty and sentenced to pay a fine of $100 and the costs of prosecution.

The assignments of error specified the refusal of the defendants' offers and points.

*W. B. Rodgers* and *D. T. Watson,* for plaintiffs in error.— The oleomargarine act is in violation of that section of the Constitution which provides that the citizen cannot be deprived of his life, liberty, or property unless by the judgment of his peers or the law of the land.

This means by due process of law in the courts of justice. Craig v. Kline, 65 Pa. 413, 3 Am. Rep. 636.

In Sharpless v. Philadelphia, 21 Pa. 161, 59 Am. Dec. 759, the court said: "The general assembly cannot . . . perform a judicial . . . function nor violate the popular privileges reserved by the Declaration of Rights." See also Norman v. Heist, 5 Watts & S. 173, 40 Am. Dec. 493.

But while it is stated with confidence that the personal rights and privileges in the Bill of Rights cannot be taken away or defeated, because the people have said they are "inherent and indefeasible," and are to remain "forever inviolate," yet it is admitted that the general assembly has a general supervision of the enjoyment of these rights in certain cases. This power necessarily results from: (1) The nature of the reservations in the Bill of Rights; (2) the grant to it of the legislative power. The power is one essentially of regulation. For example: One of the reservations is personal liberty, which involves the doing of

what one may desire. But this right is equally reserved to all of the citizens of Pennsylvania. Now, it is not only possible, but experience has demonstrated that this liberty in its fullest extent could not be exercised by everyone without, in some way, abridging the equal liberty of other citizens; and therefore it is consistent with the Bill of Rights that laws should be passed restricting this personal liberty, so that one man may 1.. t. so use his own as to injure another.

But as this power springs from and is based upon the enforcement of the maxim, *Sic utere tuo ut alienum non lœdas* (Cooley, Const. Lim. p. *574), and has for its object the preservation of the public health and morals, the legislation which is supported under the guise of the police power must, as a fact, be calculated to effect the end to be accomplished—*i. e.,* protect the public health or morals. It must, in essence, be legislation about the public health or morals. An act of assembly to give A's property to B could not be protected by calling it police legislation, or having in the title to the act or in the act itself a declaration that it will protect the public health or morals to so do. To say that the legislature may act wholly at its discretion is, as we said in Craig v. Kline, 65 Pa. 413, 3 Am. Rep. 636, to constitute the legislature the sole depositary of power. It would put at their mercy the Bill of Rights and exclude the judicial department from its legitimate functions.

It is one thing to admit that there is the power in the legislature to pass laws protecting the public health and morals, but it is quite another thing to say that the legislature must itself determine what laws do involve the public health and morals and have their decision final. Slaughter-House Cases, 16 Wall. 87, 21 L. ed. 412; Lake View v. Rose Hill Cemetery Co. 70 Ill. 191, 22 Am. Rep. 71; Munn v. Illinois, 94 U. S. 145, 24 L. ed. 91; People v. Marx, 99 N. Y. 377, 52 Am. Rep. 34, 2 N. E. 29.

The act is also in conflict with the 14th Amendment to the Federal Constitution in the following respects:

That this act of May 21, 1885, in so far as it prohibits the manufacture and sale of oleomargarine when, and only when, it comes in competition with butter made from milk or cream, is the protection of one industry (that of making butter from milk or cream) by striking down and prohibiting an equally lawful industry (that of making oleomargarine from the fat of the cow), and that, therefore, it is in conflict with the 14th Amend-

ment to the Federal Constitution, because it amounts to a practical denial by the state of Pennsylvania of that equal protection of the laws which that Amendment guarantees to every person.  Yick Wo v. Hopkins, 118 U. S. 356, 30 L. ed. 220, 6 Sup. Ct. Rep. 1064; Slaughter-House Cases, 16 Wall. 116, 21 L. ed. 421; Butchers' Union, S. H. & L. S. L. Co. v. Crescent City, L. S. L. & S. H. Co. 111 U. S. 761, 28 L. ed. 588, 4 Sup. Ct. Rep. 652; People v. Marx, 99 N. Y. 386, 52 Am. Rep. 34, 2 N. E. 29; Bertholf v. O'Reilly, 74 N. Y. 515, 30 Am. Rep. 323; Re Jacobs, 98 N. Y. 98, 50 Am. Rep. 636; Cooley, Const. Law, p. 231; Munn v. Illinois, 94 U. S. 142, 24 L. ed. 90; Den ex dem. Murray v. Hoboken Land & Improv. Co. 18 How. 282, 15 L. ed. 377; Davidson v. New Orleans, 96 U. S. 98, 24 L. ed. 616; Lake View v. Rose Hill Cemetery Co. 70 Ill. 191, 22 Am. Rep. 71; Gardner v. Newburgh, 2 Johns. Ch. 162, 7 Am. Dec. 526; Craig v. Kline, 65 Pa. 399, 3 Am. Rep. 636.

*W. D. Porter,* Dist. Atty., for the commonwealth, defendant in error.—All the questions arising out of the various assignments of error in this case were fully considered by this court, and distinctly and definitely passed upon in the case of Powell v. Com. 114 Pa. 265, 60 Am. Rep. 350, 7 Atl. 913.

The decision was adverse to the theory of the law contended for by the plaintiffs in error.  The opinion of the court is exhaustive of the reasoning upon the subjects, and to it we will not attempt to add.

PER CURIAM:

This case is ruled by Powell v. Com. 114 Pa. 265, 60 Am. Rep. 350, 7 Atl. 913, so far as the question of the police power of the state is concerned.  We were of opinion there, as we are now, that the legislature has the power to prohibit the manufacture and sale of an article detrimental to the public health. Whether oleomargarine was such an article was a question of fact, and one which had been determined by the legislature. We are bound to presume that it was done upon sufficient evidence.

The question now presented by the defendants' first and second points (see fourth and fifth assignments) was not directly made in the court below upon the trial of Powell v. Com. and was not pressed upon our attention.  We affirm this case *pro forma,* in order that both may go up together.

Judgment affirmed.